UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BETTY COOK, o/b/o CC,

                              Plaintiff,

         v.                            No. 07-CV-0669

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Betty Cook ("Cook") brought this action on behalf of her great niece, CC ("Plaintiff"),

under §205(g) and §1631(c)(3) of the Social Security Act, codified as 42 U.S.C. §405(g) and

§1383(c)(3), to review a final determination of the Commissioner of Social Security

("Commissioner") that denied Plaintiff's application for disability insurance benefits.  Before

the Court are the Plaintiff's motion for remand for the calculation of benefits and the

Commissioner's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal

Rules of Civil Procedure.

I.      **FACTS**

      **A. Procedural History**

Plaintiff applied for Supplemental Security Income ("SSI") on February 20, 2004.

She was denied benefits on April 7, 2004 and filed a request for a hearing before an

Administrative Law Judge ("ALJ").  Plaintiff was represented by counsel at the hearing held

on May 11, 2005.  Plaintiff was approximately 31 months old at the time of the ALJ hearing.

On May 27, 2005, ALJ Carl E. Stephan denied Plaintiff's request for Social Security benefits.

A request for review by the Appeals Council was submitted on behalf of Plaintiff on

July 27, 2005 and was subsequently denied on April 26, 2007.  The decision of the ALJ

became the Commissioner's final decision in the case.  Plaintiff commenced this civil action

on June 25, 2007 requesting review of the Commissioner's decision.

### B.  Medical History

The Court presumes familiarity with the background facts of this case and will set

forth only those facts that are material to the Court's determination (see Discussion, Part III,

infra).

Plaintiff was born October 2, 2002. Tr. at 8, 219.[1]  She lives with her great aunt and

uncle, who have legal custody. Tr. at 286.  Cook, Plaintiff's great aunt, submitted a claim

stating that Plaintiff was disabled by developmental delays and possible hearing impairments

and did not behave in an age appropriate manner. Tr. at 68.

On March 3, 2003, Cook completed a Social Security Administration ("SSA")

Function Report. Tr. at 60A.  On the form, Cook wrote that Plaintiff had failed hearing

evaluations and would be fitted for hearing aids. Id.  Cook also wrote that Plaintiff could be

understood by people most of the time and had a limited vocabulary. Tr. at 61.  On the

Function Report, Cook also wrote that Plaintiff had limited physical abilities with respect to

standing, walking and running and was limited in her ability to help take care of her personal

needs such as feeding and undressing herself. Tr. at 64.

---

[1] "Tr." refers to the Administrative Transcript filed by the Commissioner.

On September 4, 2003, Plaintiff visited Dr. Bradley Paddock to receive her bilateral ventilation tubes which were being inserted due to otitis media with effusion. Tr. at 279-80.[2] On January 9, 2004, Dr. Paddock performed hearing tests with Plaintiff. Tr. at 113, 142. These tests indicated a mild/moderate high frequency hearing loss and problems with middle ear fluid. Id.  It was noted that Plaintiff had ventilation tubes in her ears. Id.  Test results showed that Plaintiff was aware of speech at a threshold of 30 dBHL and could hear warbled pure tones and narrow bands of noise at 35-60 dBHL. Id.  Normal ranges for these tests are 0-15 dBHL and 20-40 dBHL, respectively. Id.

On February 3, 2004, audiologist Kimberly Strait performed an audiogram on Plaintiff. Tr. at 149-50.  Ms. Strait noted that Plaintiff had moderate to severe hearing loss and responded to speech at 25-30 dBHL. Id.  The audiogram also showed that Plaintiff's hearing loss was downsloping from 40 dBHL in the low frequencies to 70 dBHL in the high frequencies. Id.

On August 25, 2004, Plaintiff saw Dr. Elizabeth Redd. Tr. at 224-25.  Dr. Redd noted that Plaintiff had a right ear tube removed in July and that there was pain and drainage in the left ear. Tr. at 224.  The right ear was noted to be "okay". Id.  An audiogram was performed and the results showed moderate hearing loss with downsloping from 40 dB in low frequencies to 70 dB in high frequencies. Id.  Dr. Redd noted that Plaintiff had multiple delays and bilateral, moderate to severe hearing loss. Tr. at 225.  She prescribed Cipro for Plaintiff's left ear drainage. Id.

---

[2] Ear tubes are inserted during a surgery called a myringotomy. These tubes are inserted in children to equalize the pressure in the ear due to repeated middle ear infections (otitis media) or fluid build up which may cause hearing problems or speech delays.  MedicineNet.com, Ear Tubes, at http://www.medicinenet.com/ear_tubes/article.htm (last visited July 28, 2009).

Plaintiff visited Dr. Redd on September 28, 2004 for a follow up for her left ear drainage problem. Tr. at 223.  Dr. Redd noted a complete resolution of symptoms. Id.  An audiogram was performed which showed that Plaintiff had a speech reception threshold of 25-35 dB with hearing aids. Id.  Dr. Redd noted that the left ear tube was well and that the right ear appeared normal. Id.  Plaintiff's ears appeared healthy and she was getting good function out of her hearing aids. Id.  Dr. Redd recommended follow up and noted that it was critical to make sure Plaintiff's hearing was maximized to improve speech development. Id.

On March 22, 2005, Plaintiff visited Dr. Redd for a check of her ear tubes. Tr. at 221.  Dr. Redd noted that Plaintiff had drainage in her left ear. Id.  Dr. Redd recommended Cipro and a follow up appointment and also noted that she may consider removing the left ear tube as the right ear is doing well without a pressure equalization tube. Id.  Dr. Redd assessed Plaintiff with sensorineural loss, downsloping from 35 dB at 500 Hz to 65 dB at 4000 Hz. Id.

### C.  ALJ Analysis

In determining whether a child under the age of 18 may receive supplemental security income the issue is whether the child is disabled.  A child is considered disabled if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.S. § 1382c(a)(3)(C)(I).  The ALJ must determine whether the child is disabled using a three-step evaluation based on 20 C.F.R. § 416.924(a)-(d).  The evaluation process is as follows:

> First, the ALJ considers whether the child is engaged in "substantial gainful activity." 20 C.F.R. at § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." Id. at § 416.924(c). Finally, if the ALJ finds a severe impairment, he or she must then consider whether the impairment "medically equals" or, as is most pertinent here, "functionally equals" a disability listed in the regulatory "Listing of Impairments." Id. at § 416.924(c)-(d); Id. at pt. 404, Subpt. P.

Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. N.Y. 2004); see also White v. Barnhart, 409 F. Supp. 2d 205, 207 (W.D.N.Y. 2006).

To "functionally equal" a listed disability, an impairment "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a); Gomes v. Astrue, 2009 U.S. Dist. LEXIS 58812 (S.D.N.Y. July 10, 2009). The domains of functioning are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1); Encarnacion ex rel. George v. Astrue, 568 F.3d 72, 75 (2d Cir. N.Y. 2009).

A "marked limitation" in one of the domains is one where the "impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I); Pollard v. Halter, 377 F.3d at 190.  An "extreme" limitation is one where the "impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I); Pollard v. Halter, 377 F.3d at 190.  Recognizing that an impairment or combination of impairments may have

effects in more than one domain, the SSA evaluates the limitations of a child's impairments in any affected domain. 20 C.F.R. § 416.926a(c); Encarnacion v. Astrue, 568 F.3d at 76.

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 20, 2004, the alleged onset of disability. Tr. at 18.  The ALJ stated that Plaintiff had some developmental delays, but they had not resulted in symptoms that equaled marked or severe limitations in age appropriate abilities. Tr. at 21. Additionally, the ALJ concluded that Plaintiff did not have impairments that meet, medically equal or functionally equal any of the impairments listed and, therefore, she is not disabled. Id.

## II.        STANDARD OF REVIEW

The district court reviews the "administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002).  The Commissioner's finding must be sustained if supported by substantial evidence. Moscatiello v. Apfel, 129 F. Supp. 2d 481, 488 (E.D.N.Y. 2001).  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court cannot substitute "its own judgement for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review" of the facts. Valente v. Secretary of Health & Human Services, 733 F.2d 1037, 1041 (2d Cir. 1984).

A finding of legal error is cause for remand, even if substantial evidence exists to support the Commissioner's factual findings. Johnson, 817 F.2d at 986; see also Northcutt v.

Califano, 581 F.2d 164, 167 (8th Cir. 1978).  Moreover, a finding that the Commissioner has

failed to specify the basis for her conclusions is an equally compelling cause for remand.

Lugo v. Chater, 932 F. Supp. 497, 501 (S.D.N.Y. 1996).  "It is self-evident that a

determination by the [Commissioner] must contain a sufficient explanation of [her] reasoning

to permit the reviewing court to judge the adequacy of [her] conclusions." Rivera v. Sullivan,

771 F. Supp. 1339, 1354 (S.D.N.Y. 1991); see also White v. Secretary of Health & Human

Servs., 910 F.2d 64, 65 (2d Cir. 1990).

## III.        DISCUSSION

### Determination that Plaintiff's Impairments Do Not Meet a Listed Impairment

Plaintiff contends that her impairments meet the requirements for Hearing

Impairments, Listing 102.08. Pl. Br. at 18.[3]  The requirements of disability for hearing

impairments in children listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, state:

102.08 Hearing impairments.

A. For children below 5 years of age at time of adjudication, inability to hear air
conduction thresholds at an average of 40 decibels (db) hearing level or greater in
the better ear;

Additionally, Appendix 1 includes requirements for the type of testing to be submitted to

qualify for hearing impaired disability.  These state:

The type of audiometric testing performed must be described and
a copy of the results must be included.  The pure tone air
conduction hearing levels in 102.08 are based on American
National Standard Institute Specifications for Audiometers,
S3.6-1969 (ANSI-1969).  The report should indicate the
specifications used to calibrate the audiometer.

---

[3] "Pl. Br." refers to the Plaintiff's Brief filed with the Court February 4, 2008.

The ALJ did not provide specific reasoning for his determination that Plaintiff's impairments did not meet Listing 102.08(A).  The Court finds that this conclusion is not supported by substantial evidence.  The record states that Plaintiff failed hearing evaluations at five months old and would be fitted for hearing aids. Tr. at 60A.  On January 9, 2004, Plaintiff was seen by Dr. Paddock who performed an audiogram and noted that tests indicated mild/moderate high frequency hearing loss. Tr. at 113, 142.  Dr. Paddock noted that Plaintiff was aware of speech at a threshold of 30 dBHL and aware of warbled pure tones and narrow bands of noise at a threshold of 35-60 dBHL in at least the better ear. Id.  These tests were performed without hearing aids in a sound field. Id.[4]  On February 3, 2004, audiologist Kimberly Strait performed sound field testing on the Plaintiff. Tr. at 149-50.  The results showed downsloping from 40 dBHL in the low frequencies to 70 dBHL in the high frequencies. Tr. at 149.  Ms. Strait also noted a Speech Detection Threshold in the sound field of 25-30 dBHL. Id.  A copy of these tests was included in the record.

Plaintiff was examined by Dr. Elizabeth Redd on August 25, 2004 who noted moderate hearing loss with downsloping from 40 dB in low frequencies to 70 dB in high frequencies. Tr. at 224.  These results were obtained from sound field testing. Id.  On September 28, 2004, Dr. Redd noted Plaintiff had a speech reception threshold of 25-35 dB with hearing aids and that she was getting good function out of her hearing aids. Tr. at 223.

_____

[4] An audiogram is used to measure the loudness levels (in decibels) a person can hear tones of different pitches (Hz). An audiogram usually tests air conduction levels and speech recognition levels. The test is typically performed using earphones, but for young children, the test is often performed in a sound field. The child is placed in a room and the sounds are transmitted through a loud speaker. The child's response to sound is measured, however, it is not possible to determine whether the child is hearing the sound with one ear or with both. Lori Riggs, Hearing Tests: A Primer for Parents, National Association for Child Development Newsletter, available at http://nacd.org/newsletter/0608_hearing.php.

Dr. Redd also performed a tympanogram and noted normal results for the right ear and appropriate results for the left. Id.[5]  Then, on March 22, 2005, Dr. Redd reported Plaintiff's hearing loss as downsloping from 35 dB at 500 Hz to 65 dB at 4000 Hz. Tr. at 221-22.

Dr. Redd's audiogram tests were not included in the record, however, they are consistent with Dr. Paddock and Ms. Strait's test results.  Although it was noted that Plaintiff was getting good function out of her hearing aids, her test results showed an inability to hear air conduction thresholds above 40 dBHL.  These results also show that Plaintiff's hearing impairment lasted over 12 months.  Therefore, Plaintiff meets the requirements for disability due to hearing impairments as stated in Listing 102.08(A).

## IV.      CONCLUSION

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is denied and Plaintiff's motion for remand for calculation of benefits is granted. Reversal for calculation of benefits is proper when the record provides proof of disability and remand for further proceedings would serve no purpose. Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980); Gold v. Secretary of Health, Education & Welfare, 463 F.2d 38, 44 (2d Cir. 1972).

IT IS SO ORDERED.

---

[5] A tympanogram tests middle ear function. My Baby's Hearing, Hearing and Amplification, at http://www.babyhearing.org/HearingAmplification/HearingLoss/testsexpect.asp (last visited July 30, 2009).

Dated:August 20, 2009

Thomas J. McAvoy
Senior, U.S. District Judge